On behalf of the Adelante, Ms. Heidi Alombros. On behalf of the Adelante, Ms. Anastasia Gross. Ladies, are you both ready to proceed? Then you may start when you're ready. Good morning, Your Honors. My name is Heidi Alombros with the Office of the State Appellate Defender, where you defended Appellee Joseph Sundling. On appeal to this court, Mr. Sundling argued that his Sixth Amendment rights under the Confrontation Clause were violated where the trial court allowed child witness MDB's testimonial hearsay statements to be introduced where MDB was unavailable at trial, where he did not testify about the abuse allegations, his prior testimonial hearsay statements, and where the only testimony that he gave was uncontested facts. This court found in October of 2009, strictly under Garcia-Cordova, that although the child witness could not remember the details of the encounter with Mr. Sundling, because he answered the questions put to him on cross-examination, he was available for the purposes of Crawford and under the Confrontation Clause. Mr. Sundling filed a PLA, and in exercising its supervisory authority, the Illinois Supreme Court directed this court to vacate its judgment and reconsider in light of the Illinois Supreme Court case of 2011, People v. Kitch. The Illinois Supreme Court in People v. Kitch was confronted with a similar issue, whether or not the child witnesses were available for the purposes of cross-examination under the Confrontation Clause. When it analyzed this issue, the Illinois Supreme Court looked to this district's case of People v. Learn in its analysis, and noted, when analyzing this case in light of Learn, that in Learn, that court had found that as long as there needs to be accusatory testimony by the child witness in all of the... Isn't Learn really just about competence? Well, the court in Learn actually found the child minor witness competent, and although part of his analysis, part of the analysis in Learn was discussing other cases where child victims are not available, they clam up, they cry, they scream, they also analyzed it under Confrontation Clause and found that there still needs to be some accusatory testimony. And since in Learn there was no accusatory testimony, and since there was otherwise, the child was not confronted by his prior statements that he was not available for the purposes of the Confrontation Clause. Didn't the child give accusatory testimony in this case by stating that he did remember that the defendant touched him, but he didn't recall where? Well, Mr. Sundling... Well, what's uncontested is Mr. Sundling, who was a guest of the family, was in the home wrestling with the children downstairs in the basement. And again, as he was a guest and as he was, you know, wrestling, that was not illegal conduct for him to wrestle with the children. What the state was required to prove is that there was intentional sexual contact. And since NDB could only testify about being touched somewhere, and again, you know, there was wrestling, there was tossing up in the air, that wasn't sufficient accusatory testimony. So is your argument similar to the argument made by the defendant in Kitch, that there has to be testimony from the witness on each element of the offense? Not on each element, but some accusatory testimony. All that happened here was NDB simply said, I was in a room with a defendant, he was a friend of my parents, and that's all that I remember. And what's different in this case than you have in Garcia-Cordova, what you have in Bryant, what you have in virtually every other case but Rolando's G in Learn, is that was the end of the inquiry. This minor victim got on the stand and said, I don't remember being touched anywhere other than permissible contact, because again, he was allowed to be wrestling. And that was it. The state didn't follow that up with, do you remember speaking to an investigator? Do you remember talking to him about the events? That did not happen in this case, although it did happen in Garcia-Cordova and it did happen in Bryant. The child in this case was not the only accuser, though. That's true. CI testified and gave eyewitness testimony as well as statements by the defendant, correct? Yes, CI did testify. And didn't this court say in Learn, in conducting its confrontation analysis, that if the child is the only witness other than hearsay reporters who can accuse the defendant of actions constituting the charge of offense, the child must testify and accuse the defendant of actions constituting the charge of offense? And in this case, he was not the only accusatory witness. In that analysis of Learners from the statute, how in order to admit statements under 115-10, which is not at issue here, we're not disputing that under 115-10 they wouldn't have been admitted. We're arguing that under the confrontation clause, since MDB didn't give any testimony at all virtually, that in order to admit those testimonial hearsay statements, they should not have been admitted to trial, although CI's statements did come in. He was not a child victim. But under the confrontation clause, MDB should have given some sort of accusatory testimony, not in detail, not to every element. How much is enough? How much is enough accusatory? I would say it would be, it touched my private part. That's enough. Was it enough in Major Flisk? Yes, I believe it was enough in Major Flisk. In Major Flisk, the first district noted that the charges against the defendant were that he had touched the anal area of the child. And the child testified that Major Flisk used to make him sit on his hand, put his bottom on his hand. That, to me, is enough accusatory testimony, revelant to the charge conduct. Here we don't have that. All we have is, you know, touch somewhere where I don't remember, I don't remember. So in Major Flisk, that was enough. Again, nothing detailed, not element by element, but some accusatory testimony. Or at the very least, what didn't happen here is the state didn't even bother to ask the minor, did you make any accusatory statements against Mr. Sunlight? That was not done here, as it was done in my companion case in Garcia-Cordova. This child otherwise wasn't asked, do you remember going down to the police station? Do you remember giving a statement? That wasn't done in this case. And what you have in most memory loss cases from Owens and Fenster and from Flores is the witness says, I don't remember, I don't remember. But then are asked, oh, but I do remember testifying in the grand jury proceedings. Oh, but I do remember giving that statement. Oh, but I do remember, you know, this happening and giving information to the police force. This court in Martin just a couple of months ago also reviewed something similar to this, where the victim had a memory loss, said I don't remember the incident. I don't remember being punched in the face by my boyfriend. And the state said, do you remember giving a statement to the police? No. But she said, is this your handwriting of your statement accusing your boyfriend? Yes, it is. That's enough. That's sufficient. In Martin, this court said, and again, it's the case this year, that the confrontation clause is not violated as long as the witness appears, answers questions, and is cross-examined, but is unable to remember previous events. I mean, why should that not apply in this case? Well, the Martin witness also acknowledged she had made prior accusatory statements. What you have here is there's nothing to cross-examine on. I mean, when you look at it formally, cross-examination is limited to what the witness presents in direct testimony. This witness didn't present anything in direct testimony. If a witness is being offered for purposes of foundation for a statement, doesn't it just make sense that the court is going to allow it? The trial court didn't restrict cross-examination here. No, it did not. But then there would have been nothing. For confrontation clause purposes, it requires that the defendant have the opportunity to confront their accuser. MTB was not an accuser. He didn't accuse Mr. Sunling of anything. And otherwise, in cross-examination, counsel, how is he supposed to cross-examine him about statements that he hasn't even acknowledged making? This would be like a witness coming up and then asking him what he did the week before. It's not relevant. There was no opportunity for Mr. Sunling's attorney to cross-examine about anything. It's a prior and consistent statement. If the child says, I don't remember, and then the child made a prior statement contrary to that, wouldn't that – wouldn't any judge allow that? It's separate apart from the foundational aspect. It's a prior – it could be offered as a prior and consistent statement. Well, then we're in the position in which defense counsel challenged the minor in saying, don't you remember making a statement about this? Which, again, is – has nothing to do with the confrontation clause. And admitting this is substantive evidence. That has nothing to do with the confrontation clause. A defense attorney confronting a witness with a prior statement. Could confront the witness, but you would not want to get in the information. I mean, this – this testimony and hearsay statements were incredibly damaging. I mean, in order – what you have with this defense counsel – Wait a minute. That's a tactical decision. So what you're saying, though, is if the child says, I don't remember, then the state, line for line, can go through that prior, very incriminating statement and say, well, isn't it true you said he did this and isn't it true you said he did that? And that would be allowable if – and, you know, many defense attorneys, when the prosecutors start to do that, would object on the basis of, you know, hearsay, prior, consistent statement, whatever. Many trial courts would sustain that objection. So where are we going with this? Well, I guess what I'm saying is I don't believe it has to be a line by line introduction by the state. But I think that for confrontation clause purposes, to admit this as substantive evidence, not as impeachment testimony, as substantive evidence against my client at trial, at the very least, the minor should acknowledge having made any accusation. What we're left with here is a minor saying, I don't remember anything happening. And then there's no information provided in direct testimony, which, you know, LEARN does. And so it's Kiss, through direct testimony, accusing my client of anything. And, again, this may not be very complicated and very formalistic. And, you know, on remand, this evidence isn't suppressed. The state could simply ask the minor, do you remember having a conversation with Detective Plant and giving statements about this? So in order to be admissible, the state must confront the witness with the prior statement. Are there cases that say, in order for a statement to be admissible as substantive evidence, that the state must confront the witness with their prior statement? I wouldn't say that it's confrontation. I wouldn't say that the burden is now on the state. I would say that this is the state's witness, and they seek to have this testimony admitted. And in order to satisfy the confrontation clause, they are required to have their witness make an accusation. Doesn't that ignore the reality of life with child witnesses who've been sexually assaulted and abused? The turmoil that they're going through, the shock of the courtroom, that each child is slightly different, but they all suffer from fear, intimidation. And oftentimes they still love the offender and don't want to testify. Doesn't that just ignore those realities? I believe those are realities, but there's no separate confrontation clause when the victim is a child. We only have one. And although I'm sympathetic to that, I'm also sympathetic to my client being on trial and doing a 20-year sentence. So I don't think this is an extraordinary burden on the state. Defense counsel chose not to cross-examine. Yes. And doesn't the case law stand for the proposition that strategic decisions not to cross-examine do not make a witness unavailable? Isn't that an accepted principle? The witness is unavailable. We are arguing that he had nothing to cross-examine the child on. The child didn't give any testimony regarding the event. He said, I don't remember, which is effectively the freezing up. Effectively, I don't remember, I don't remember. But what you don't have is, do you remember making statements about this? Couldn't the defense counsel just have reaffirmed what the child said on direct, what the child recalled? He recalled Joe, and all you recall is just wrestling. He could have done that, and that would have been effective cross-examination. He could have done that, and again, the child answered three or four times, I don't remember, I don't remember, I don't remember. But isn't that the whole point of cross-examination is to confront the witness? Confront the witness with their accusations. If the witness testifies and says nothing, if the witness just testifies that I like the color blue and, you know, I think the courtroom is pretty, then I wouldn't get up there and ask them questions about the offense when there's the- Many trials are won on cross-examinations that are limited to the child's direct, reaffirming that the child has no recollection, reaffirming that the child just knows Joe, reaffirming that all they did was wrestle. And he had an opportunity to effectively establish those facts just based on the child's direct and chose not to. Absolutely, and there's no requirement of cross-examination. And again, the minor child, since he didn't say anything beyond that, maybe defense counsel felt it wasn't- the child said he doesn't remember, the child said he doesn't remember, the child said he doesn't remember. So the risk is that the child's going to open up and then recall the mess. It's possible. I mean, I don't know if this child would have. I think this child was very adamant that he did not remember anything specific about what happened and wasn't asked anything else in regard to whether or not he had ever accused Joe of anything. Well, is this trial strategy or ineffective assistance? Since we- it wasn't- we didn't raise the argument as ineffective assistance of counsel for failing to cross-examine. This would be trial strategy. We take the position it's trial strategy. You have a witness up there who says, I don't remember any event, don't remember a statement, sit down, and that's the end of it. It's effective trial strategy. As Justice Burkett said, many cases are won because the victim or the child victim has no recollection of the event, doesn't testify to anything, in spite of what other witnesses might say. Right, there was- defense counsel could have gotten up there and asked him a couple of questions, but he didn't testify about anything relevant to the accusation. And defense counsel- Counsel could have cross-examined him on the statement and the event. Counsel could have. But then we're asking counsel to inject his own error into the proceedings in order to preserve it for possible appellate review. How about we're asking counsel to follow up on it and say, do you recall the event? And the child says no. Do you recall making any statements? And the child says no. Isn't that effective cross-examination? Counsel could have done that. But at that point, this child hadn't testified to anything. He was not available to testify either about the statements or about what had happened to him. It's also effective cross-examination. So cross-examination would be limited by what the child had testified to on direct? Is that your premise? Well, I'm saying it could be effective cross-examination to just sit down at that point and just say, we have nothing from here, we have nothing from this child witness. This child didn't testify to anything. And that would be effective cross-examination? Again, it's whether or not you are given the opportunity for effective cross-examination. I'm not arguing that there was effective cross-examination. I guess that's what I'm trying to discern here, and I don't mean to be splitting hairs, but witnesses on the stand, available to answer questions, could have been cross-examined on the event and the statement. How was that child not available? Because the child didn't offer any accusatory testimony. And what LEARN tells us is that in LEARN, only a couple of basic questions. I'm trying to get you to draw the line here and tell me where you think the rule of law falls. Because the child did not say, the defendant did X, because we don't know what X is, you're very soft on that, but did something, that's what makes the difference between this child being available and not available? Yes. What difference would that have made to a cross-examination? In order to provide for effective cross-examination, the witness first has to be available. And what I'm saying is we're looking at it, I guess, the same way but two different ways. Okay. Two different ways? Okay, I'll go with that. I'll go with my way. That because this child didn't say anything incriminating, that child was unavailable at that moment. The counsel's not required to glean out and then tease out as many different objections. Again, it's the state's burden. Tease out objections? Who's objecting here? Well, to tease out this evidence in order to counter it. I'm putting counsel in an untenable position that you have to get the minor child to admit to accusing your client in order to try to defeat the statements. And since it's the state's burden to prove in a reasonable doubt that my client's guilty, it's the state's burden to have their witnesses available. It's their burden to have their witnesses available, not for my counsel to make sure that their witnesses are available. It seems to me the threshold point of your argument is that, and I may be wrong, correct me if I'm wrong, that by a witness saying, I don't remember, that is equated with freezing up. You're equating this case to Rolandus G. and Learn, that that witness, by saying, I don't remember, it's the same as freezing up. We have many, many cases, including Martin and Flores and all these cases where witnesses said, I don't remember things. And nobody ever found that they were freezing up. There's no indication in this case that this witness did not respond to a question. Unlike Rolandus G., unlike Learn, those witnesses did not respond. They cleaned up and would not say a word when asked questions. This witness answered every question that was asked. Why is it the same? Just because the person didn't accuse and give accusatory testimony and said, I don't remember? Well, Learn directs us that there needs to be some type of accusatory testimony. And I think Learn is consistent with Garcia-Cordova in this matter and with Martin and with Major Flisk in the sense that what you have in Learn and Rolandus G. and in this case, whether you want to call it refusal or, you know, not stamping your feet, this is a child witness. I mean, kids a lot of times say, I don't remember, and that's refusing. Versus the other cases, it's here, nothing, we're talking about the right to confront your accuser. And the children in these three cases in Learn and Sunling and Rolandus G. didn't accuse anyone of anything. Whereas in Garcia-Cordova, the witness was asked and basically acknowledged, I have accused this man in the past. What you have in Bryant and what you have in Martin and Major Flisk is there's either an accusation or the minor at least acknowledging that they have accused in the past. In Martin, the witness, the victim, testified that she didn't recall because she was drinking, and then the state impeached that testimony with evidence from the police officer that there was no order of alcohol and that she was not, in fact, intoxicated. So she was just refusing to or didn't want to testify against her. Didn't want to testify. Domestic violence claims, she's, you know. So she was, but she was available. She was available because what the state also introduced, regardless of that, was her acknowledgment that she had made these claims. You didn't. It renounced her handwriting. Her handwriting. What this court found was an acknowledgment that she had at least accused someone. In here, if the child had said, that's my drawing? Yes. That's all it would have to say? That's all it would take. You've accused Joe of something in the past. Now we have nothing. If we need to draw a bright line rule and not go into some extensive, you know, laundry list of what the state needs to do, at the very least there were pictures in this case. There was a videotape. Did you circle this? Yes. Do you remember reading detective plan? How about that? If the state put the videotape on and just asked the child, is that you? I think that could be sufficient. Do you remember sitting in that room? Yes. And you don't think a defense attorney would object to playing that video again? You can cross-examine on that now. Now you can say, I object to it. What makes you think you couldn't have cross-examined on it before? Because at that point, defense counsel obviously thought that the better practice would be just to not go into this detailed videotape and thought that this minor child's unavailable. Again, at the time of this, the second district kind of borne the brunt of this litigation of availability. The trial court just thought, as long as the body's in the chair, that's it. So, you know, I'm not really sure. I wasn't defense counsel. I'm not sure what's in the mind. But what we know from LEARN, which this court has directed, you know, because of Kitch, if we need accusatory testimony, in this case it didn't happen. This case is more consistent with LEARN than with Garcia-Cordova, which I think can be fully reconciled. If you ask a minor child a statement, if the state wants to bring this in, they should try to at least have the child identify, yes, I made that. What if the child says, I don't remember? Then you have the same that goes out with adult witnesses who get on the stand and say, I don't remember. Do you remember being in the building? Do you remember? That's what the state does every day to all of their witnesses. Or I think we're kind of shading it because this is sensitive children and tender years. But, again, maybe it doesn't have to be as detailed. But something so that I, as a defendant, know that you have accused me of a crime, and now I can confront you with everything. I can say, oh, you don't remember in court, but you said all these statements. Or in the interest of fairness, just something very basic. And, again, on remand, this is suppressed. The state could still have the opportunity to introduce this statement. We didn't believe that LEARN applied to the situation originally. And we were asked or ordered, I should say asked or ordered, to reconsider this case in light of Kitch. And so simply because Kitch distinguished LEARN, now we've got to go full circle and reverse our decision previously and say LEARN does apply? Because Kitch distinguished LEARN? Kitch did distinguish LEARN. Kitch didn't apply. Kitch didn't adopt LEARN. Kitch didn't say we are adopting LEARN as the law of the state of Illinois. It simply said the defendant here is arguing LEARN, and LEARN doesn't apply for these reasons. So now you're asking us to completely reverse our decision in this case based upon Kitch distinguishing LEARN. Well, I also think that they did use the analysis of whether or not that's an accusatory act. I don't think the Illinois Supreme Court is arbitrary in when they send things back. And I also would note that LEARN, that PLA was pending, and that PLA was denied. The two PLAs that were antithetical to LEARN, Garcia-Cordova and Sunling, were both remanded in light of. And the Illinois Supreme Court had LEARN, Sunling, Garcia-Cordova all in front of it when it decided Kitch. And could have told us to reconsider in light of LEARN. Kitch did tell this court to reconsider in light of LEARN. But also the defendant, I will say the state in Kitch, was arguing that the facts of this case were more similar to Bryant, its own Fourth District case, which is very similar to Garcia-Cordova. And the Supreme Court didn't even mention Bryant at all. Didn't mention Owens, didn't mention Fenster. So obviously they don't put this in the same category. If the court just wanted to say, well, you know, this is not a memory case, they simply could have. But there's something in here, and possibly this testimony, that separates it from the rest of this court's jurisprudence. I don't find them necessarily not contrary. I think that a ruling in this case, that because the minor child gave no accusatory testimony and otherwise did not acknowledge her prior accusatory statements, then that's what distinguishes this from Garcia-Cordova, from Bryant, from the other Second District cases and the Fourth District cases. What about Owens and Fenster? What's interesting about Owens and Fenster is you have Owens, you have the witness saying, I don't remember the defendant shooting me, I don't remember making statements, but I remember saying that the defendant shot me. So again, I don't remember having recall problems about the event now, but I certainly remember giving some sort of statement. And Fenster, too, you have the analyst saying, I don't remember which of the three methods I used, but I know that I used one of them. And that's what you have in Flores, when you have the witness getting on the stand saying, I don't remember the defendant telling me that he killed that person, but I remember being in front of the grand jury and I remember giving that testimony. So again, this is fully consistent, a ruling-like learn, narrow. In the rare cases when the state doesn't try to otherwise ask the minor child about the past accusatory statements, that the Confrontation Clause would prevent those hearsay statements from coming in, undisputedly by the state, testimonial hearsay statements from coming in at trial. So if the state had asked the child line by line or more globally about the prior hearsay statement, and the child continues to say, I don't know, or I don't recall, I don't know, whatever. I think that's sufficient. I think that opens the door. It provides counsel with the ability. What more does counsel have to cross-examine when the child says, I don't remember, or when this prior statement and the prior event is open cross-examination? Do you need to have the state elicit the first, I don't know, before defense counsel can elicit an I don't know? I think so, yes. I think you have to have the child say something. Again, the child has to say something in order for you, state's attorney, you're the one who wants these statements in as substantive evidence. The defense doesn't. Well, let me ask this. The Crawford analysis began with the problem of witnesses or defendants being convicted based upon testimonial hearsay, and the witness is never in the chair. Isn't that really what we're talking about? You have to put the witness in the chair and afford the defendant the opportunity to confront that testimony, which is the testimony is the 11510 statement, not what she says in the courtroom, and you have to put a competent witness in the chair so that the defendant can confront that hearsay, and that opportunity was presented here. It was not presented because the minor child, in direct testimony, in direct testimony, did not offer any accusatory direct testimony, and as defense counsel, you're not required to inject all of these prejudicial statements on the hope that finally, again, the trial court found this child available. So if I don't have, I mean, again, I'm not sure exactly of trial testimony, but again, if unavailability is determined by that child on the stand didn't either give any accusatory testimony or acknowledge the prior accusatory testimony, then in the future, well, I don't need to do anything because that statement's not coming in. Now, if I choose to inject it for whatever reason, for impeachment purposes, again, this is the state that wants this testimony to come in. They want it to be used substantively because their witness didn't, obviously, there wasn't enough from their minor witness to testify about being in the room that day. So it's the state's burden because it's the state who wants to use this evidence substantively to establish my client's guilt, and my client could not have cross-examined that child in the room with the police officer. Do you cross-examine the witness on the statement that he or she gave? Had the minor acknowledged the statement was, in fact, made, and I think that's what makes Learne different from the other case law in this area. What makes Learne different than Owens and Fenster is that you don't have that back-end from the state going, oh, my witness doesn't remember for whatever reason, you know, whether I don't want to testify or refusing to testify. So what about this? Didn't you say this? I mean, I think that I don't know could be refusal or the problem is with children, it's probably literally I don't remember. So in all of those cases, there's no case where the state does nothing. And then under Owens and under Crawford, which is defend or explain the statement. This child did not defend or explain the statement. And an explanation could be as simple as yes, I made it. And that's what the confrontation clause requires. And that's where I think that, you know, this case fits in very well with Learne, but it's consistent with the other holdings by this court and the first district and the fourth district. So with respect to any witness who testifies in any criminal trial, if the witness does not directly, I don't want to use the word accused, but offer testimony that is harmful to the defense, there's no point in cross-examination? I'm saying there could be. I mean, I'm saying there might be. But in the case, I'm not saying you should always sit down. But again, when you're confronted as defense counsel, there was nothing to cross-examine this witness on. He already said everything that he was going to say. There was nothing to cross-examine because there's no accusatory statements at that point. That minor child had done nothing to accuse my client of anything at that point. Okay. Anything else? No, thanks. You'll have a chance to reply. Do you wish to make an argument? Yes. May it please the court and counsel, my name is Annastacia Brooks, and I represent the people in this case. Initially, Your Honor, I would like to apologize for somehow thinking that the front door had been locked from the inside, and I wish I had been able to open the building. Don't worry about it. I forgot my pass to get in the back. Sorry. As to the argument here is that MDB had failed to accuse the defendant of something or any incriminating conduct according to the defense. But, again, we have the testimony in the court, which was that they had wrestled. And that in itself is incriminating enough and damaging and harmful enough to the defense because of the other evidence, which was produced in the trial, not testified to by MDB, but the one other witness who was there who testified, the other boy who was there who testified to the defendant's remark that he was saying, I'm going to get your penises, and also the defendant's own admissions over here that he is a pedophile. And so the claim somehow that this is not a crime because the parents allowed him to wrestle, I'm trying to remember exactly what the state of the record was as to why the parents let him go downstairs. I think it might have been to say goodnight, for example. But there was also no knowledge at that point of the defendant being a pedophile, and the parents obviously would not have let him go downstairs at all unaccompanied by any other adults to have contact with the minors, let alone to actually touch them, if, in fact, it had been known that he was a pedophile at the time. So for those reasons, it's not necessary to show that there was, in fact, a crime that was being accused. It's not a situation also where the defense claim is there's no single shred of accusatory testimony, but yet the allegation that there was wrestling involved was incriminating and accusatory for those reasons. And so the allegation here that an oral argument was that the MDV gave virtually no testimony at all is not true because there was, in fact, testimony about which the defense had the ability to cross-examine on, which was the fact that because the boy had only remembered the wrestling and could not remember where he had been touched, distinguishes this case from LEARN in the sense that here the witness was asked about the details of the crime and was able to respond to questions. And so in this sense, it's not a LEARN-type issue. And when the defense concedes that Major Flisk is enough, and in that case, what there was is an allegation by the child that he was made to sit on the defendant's hand, which, of course, is sort of like the wrestling incident of this case by itself, which seemed like not to be establishing every element of any crime by itself, which is a different situation where if the kitsch rule, as the defendant used to claim apparently, is that all elements have to be established of every charged offense by the testifying witness at trial in order to make prior statements, it becomes difficult when the witness may not have been involved in other crimes as a victim, might not even be a victim at all, and also might, as a young boy, might not be able to testify as to the defendant's mental state element. For example, intent to perceptual gratification, that might not be possible for a boy to testify to that element. So the rule itself doesn't exist, and even if it did, it would be totally unworkable. And the concession here that Major Flisk is enough essentially should be withdrawing the defendant's arguments that somehow kitsch requires much more than, for example, the Major Flisk claim that he sat on the defendant's hand. What about the defense counsel's argument, or at least alluding to this, that by failing to at least confront the child or have the child acknowledge making the statement, the scope of cross is so narrow that the defense is prohibited from going into it? I'm not sure that the defense would be prohibited by rules of evidence from cross-examining the witness as to the prior accusation that was made out of court merely because the witness was never, if the witness were, in fact, never asked about making the prior statements. I'm not sure that would bar the defense as a matter of evidence from getting into that form of cross-examination. And even if that were the case, there was no such attempt made, the defense wasn't being barred from making that line of cross-examination. So since it's an error for that cross-examination to have been attempted but yet barred, for example, or that was in violation of the Sixth Amendment, that never happened here in this case. That was not anything that had actually happened. So for that reason, there would be no Sixth Amendment violation merely because the prior statement was admitted and the only accusations that were made were the out-of-court accusations, not repeated in court by the witness from the witness stand contemporaneous to the cross-examination. So the fact is that the defense doesn't have a case like this that they can rely on to show that this violates the Sixth Amendment as the framers had intended it to be, that somehow a witness has to either come into court and acknowledge, either make the accusation directly in court or acknowledge having made a prior accusation so that they can be then considered, quote, an accuser and then have that happen in order to fulfill the Sixth Amendment. I don't think they've cited a single case where that is, in fact, the state of the law that should be followed or has to be followed as a matter of Sixth Amendment jurisprudence. What's your position on why the Supreme Court asked us to reconsider this in light of Kitch? I mean, the argument is that we're supposed to look at Kitch and Learn and all the things that are contained in the Heard Counsel's argument. What's your take on what the Supreme Court wants us to do? That's a very good question, Your Honor, because it doesn't seem clear that the Supreme Court in Illinois, without saying so, has requested this court to reconsider this opinion in light of Learn because that is something the Supreme Court of Illinois could have specifically done, which is if Learn had been vacated, for example, and reinstated, and then now this court might want to reconsider in light of Learn, if that was something that the Supreme Court had intended for this court to do, it would have said so. It could have said so because it could have, it should be presumed that that's what it would have done if that's what, in fact, it intended. So what this court should do is conduct the independent reevaluation of this case in light of Kitch, which, of course, it seems like that would be sort of like a fruitless exercise because Kitch doesn't really help the defendant. It doesn't really do anything except show that Learn can be distinguished when the factual proposition advanced by the defendant in Kitch is not, in fact, true. That the defendant in Kitch had received, that the testimony of the accuser in Kitch was sufficient to meet the standard put forth by the defendant. So therefore, it was not necessary for the court in Kitch to analyze that as an actual proposition of law. So the principle of jurisprudence, the court didn't have to then go into the whole analysis of saying, okay, well, exactly where do we draw the line, what level of testimonial specificity is needed in order to meet the Sixth Amendment constitutional standard. It was not necessary to undertake that because whatever the defendant claims was needed was, in fact, met. So it seems like going any further would have been an unnecessary exercise and unwise by the Supreme Court of Illinois if they had, in fact, tried to promulgate a rule of general application in light of facts that it was not warranted to undertake that analysis. And for this case, as well, because this case does not fit within the scope of LEARN, the state would have, perhaps, in this case, argued that LEARN was wrongly decided. But we don't need, in this case, to reanalyze whether LEARN was correctly decided or wrongly decided because this is not a LEARN case. This is not the same type of situation. So it would be unnecessary for this court to then try to get into a different issue and try it, which was LEARN being mostly about the 115-10 statute, and try to analyze whether that case reached the correct result. Because that's not relevant here. That's not what this case is about. So it wouldn't be a wise exercise for this court to then try to go in and reexamine LEARN. So if this court just simply follows the direction of the Supreme Court, as specifically expressed, to reconsider this case in light of Kitch, it's very simple. Kitch doesn't really speak to anything to change this result. So this case should be virtually automatic then to adhere to its prior decision to affirm because Kitch doesn't really help defend this argument in this case. So... And so you suggested that there was sufficient accusatory language when MB here testified that they wrestled. So are you conceding that there must be some accusatory language? No, Your Honor. I do not want to give the implication that I'm conceding in any way that the accusation must, in fact, come from the witness on the witness stand contemporaneous with the cross-examination. I'm not... No, that cross-examination would be direct examination. I'm saying that the defense opportunity for cross-examination, the defense, it appears to claim, has to be contemporaneous with an actual in-court accusation from the witness stands. That appears what the defense argument is. I am not conceding that point. I'm not conceding that there somehow has to be an in-court accusation from the witness himself or herself, from the witness stand, that would then be contemporaneous with the defense cross-examination rights in that same proceeding. I'm not conceding that because, in this case, the accusation is mostly, not completely, because of the wrestling allegation, but the accusation in itself is contained in the recording of the interview. That's the out-of-court statement. That's an accusation. That makes MPB an accuser. There is something to cross-examine him on because, essentially, that's his accusation as part of his accusation, and it could have been cross-examined about. And so, therefore, the allegation that there has to be actual in-court accusatory testimony, I don't see a case cited specifically for that proposition. And, to an extent, LEARN might say something about that. LEARN involved a statutory requirement under 115-10 that the child must testify at the proceeding. Otherwise, it goes down to the other subsection dealing with corroborating evidence. So when there's a statute that says, one part of the statute says the child must testify, what does it mean to testify? Well, that becomes a matter of legislative intent. What does the legislature intend when it required the child to testify? Did it require that there has to be accusatory testimony? Well, if that's so, then that's a matter of statute. That's a statutory requirement in order for that hearsay to be admitted under that particular subsection, that the child testify in court, meaning that he gives some accusatory testimony. But if this case is not about 115-10, it's about what the Sixth Amendment requires, then the defense would have the burden of citing an actual case on point directly for that proposition because otherwise this court would be blazing a new trail and making new law in an area that really has many, many decades and maybe over hundreds of years of precedent in terms of what satisfies the Sixth Amendment. So for those reasons also, perhaps it's not part of the remand request, but to the extent this court might have occasion to reexamine it in this reconsideration, the forfeiture of plain issue arguments, I just wanted to briefly touch on that. No post-trial motion, that's required by statute. There is no futility exception. If you don't file it, then if you claim it's ineffective, it doesn't really matter. You're stuck with plain error review. So in this case, the defendant has the burden of showing plain error. I'm not going to reiterate all the arguments why this case was strongly weighted against the defendant. It's not a situation where it was just empties word against the defendants. Got the overhear recordings, got an independent eyewitness, the other boy CWI, and in this case also, confrontation errors may be harmless. Therefore, they're not structural in error. There is no presumption of prejudice for a confrontation error, even if there were one. And therefore, you can't then go into the second prong of plain error analysis. That would be presumed errors. They're structural in nature, and that's not the situation here. And even if it had to be a harmless error situation, the fact is that the MDB also made non-testimonial statements to his mother. There's also other testimony to show that the case was so strong against the defendant and this element, the recorded accusations were merely cumulative and therefore could be considered harmless even beyond reasonable doubt. And so this case was mostly about the defendant's mental state when he touched MDB's genitals. It was a case where he was on the recording saying he might have touched them. So it really gets down to what was he thinking at the time and the fact that he was an admitted pedophile. And he was making the comments, I'm going to get your penises. It seems overwhelming what his intent was, and it was sexual in nature. So for those reasons, if this court has no further questions, the state requests this court to affirm. Thank you. Thank you very much. Do you wish to reply? Yes, I'll be brief. Just a few points. I think it's very interesting that the state is not asking for LEARN to be whole cloth disregarded and discarded. They're actually saying that in certain contexts LEARN could apply. And although LEARN was about the statute, the Illinois Supreme Court certainly knows how to read LEARN, and they analyze LEARN using the Confrontation Clause. I would also like to point out as far as, and I believe this question was asked of the state, I was just briefly looking over Garcia-Cordova, and in this case, in Garcia-Cordova, this court noted that defense counsel chose not to cross-examine the witness, but when it looked at the opportunity for cross-examination, it looked at what the witness had actually testified to and said that defense counsel could have questioned the witness based on what was offered at trial during direct testimony. Substantially to my claim that here, since you have no comments at all, either accusatory or about the statements, that the Confrontation Clause would prevent those testimonial hearsay statements from being introduced. And just briefly, since the state is seemingly conceding the framework we analyze about accusatory versus not accusatory, yes, my client has admitted during his statement that he was a pedophile, and it was probably incredibly bad judgment for him to befriend people and be around children potentially with these type of claims to be made. But half the family did know that my client had been convicted of a sexual assault in the past, and again, nobody saying he was a guest of the home. And his status as a pedophile was not what the state was required to convict him on. It was required to convict him on the actions of intentional sexual touching. There's no further questions. I would ask this court to, in conjunction with the other errors that this court found in February 2009 when it found that the admission of my client's prior convictions were also error. I do have one question. I mean, that last point you made, you cited Robinson v. California. That was the California law that punished addiction, not the actions. Right. And that's not what's happening here. He's not beingóhe wasn't convicted because he's a pedophile. He was convicted based upon the evidence. Absolutely not. He was not. But since his status as a pedophile cannot be used to convict him, and since we have hereówe have the twoóthe prior convictions that this court had already found should not have been introduced at trial, in conjunction with the removal of these testimonial hearsay statements, that's two significant errors and two too many. So on remand, we would ask that, as this court found out, that regardless of the forfeiture, that this is a serious issue and that the evidence was closely bound. Counsel indicated that accusatory language was present in this case by the phrase, they wrestled. Why isn't that enough? Because that's uncontested. My client absolutely agrees that he wrestled. There was no contest that he was wrestling, not just with the children, but with another adult male. So if your client had denied that the wrestling took place, then that's enough. If identification was an issue, that would be accusatory testimony. But identification of who was in the basement or when was not an issue in this case. It was whether or not my client intentionally sexually touched these children. Had there been evidence of this touching around the genital area, that would have gone to establish his intentional sexual conduct. So here it required more than they were wrestling. They were wrestling and he, I think you said, the child says, and he touched my private part, that's enough. As a major flisk or put my hand on my bottom. Something that would show intentional conduct. Again, since everyone's in agreement that he was permitted to and could have touched the children and was wrestling with them, again, horrible judgment. But the conduct that he was charged with was intentional sexual contact. You just made a comment about since identity was not an issue. Well, regardless of whether the defendant concedes identity or not, the state still has to prove it beyond a reasonable doubt. So any testimony that tends to establish identity is, in fact, as a matter of law, accusatory because the state has to establish that element of proof beyond a reasonable doubt. Correct? Yes. The point I was trying to make was, had this been a stranger case and the child not remembered the incident, the fact that the child could ID the client as someone she met and had no other reason to know him, I mean, in these child sexual abuse cases, generally the victims are family members and friends. So saying that I know my stepfather or I know my friend of the family or I know my grandpa really doesn't establish anything more than an uncontested fact. Anything else? Thank you. Thank you both very much. We'll be in recess.